NOTICE

*Memorandum decisions of this court do not create legal precedent.  A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| CYNTHIA ISAAK, | ) | |
| | ) | Supreme Court No. S-15216 |
| Appellant, | ) | |
| | ) | Superior Court No. 1JU-11-00523 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| PHILLIP ISAAK, | ) | AND JUDGMENT[*] |
| | ) | |
| Appellee. | ) | No. 1524 - December 3, 2014 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Philip M. Pallenberg, Judge.

Appearances:  Michael Gershel, Anchorage, for Appellant. Gregory W. Lessmeier, Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

I.     **INTRODUCTION**

Cynthia and Phillip Isaak divorced in 2013.  The superior court ordered that they share custody of their children and divided their marital property.  On appeal, Cynthia challenges as clearly erroneous the superior court's finding that a vacant lot next door to the marital home was not marital property.  We agree that the evidence does not support the superior court's finding, and we therefore reverse and remand for further proceedings.

---

[*]     Entered under Appellate Rule 214.

## II. FACTS AND PROCEEDINGS

Cynthia and Phillip Isaak married in 1995 and separated in 2011. In memoranda filed before their divorce trial, the parties appeared to agree that the real property to be divided between them included the marital home and a vacant lot next door. Cynthia listed the lot and its value in her property table and proposed that both the home and the lot be allocated to Phillip, explaining that "the marital home . . . is part of his family's land[,] and Ike's Fuel [Phillip's family's business] uses the adjacent lot to park its fuel trucks." Phillip wrote in his trial brief that "[t]he parties seem to be in agreement that Phillip will receive the marital home given to them by Phillip's mother, and that it has a fair market value of $370,000 plus an additional $75,000 for the adjacent lot."

At trial Cynthia introduced an appraisal of the lot without objection. Asked whether the couple owned the lot, Cynthia answered, "[Y]es, it was gifted to us when [Phillip's parents] gifted the house to us." Both parties testified briefly that the lot was valued at $75,000 and should be awarded to Phillip. There was no other evidence about the lot's ownership or value.

After the close of evidence, and after the court had made oral findings related to custody of the couple's children, Phillip's attorney addressed the court and for the first time raised a doubt about the property's ownership:

> I do have one thing to raise with the [c]ourt, just to notify the [c]ourt. I got a call from [Phillip's father] about an hour ago. And he said that the lot that we had included in the paperwork and the testimony in court apparently was mistakenly conveyed to the parties when his wife was trying to convey the house. I'm not sure that's an issue that I can address. I think it may be something [Phillip's father] has to address. I just wanted to alert the [c]ourt and the parties of that potential issue.

Cynthia's attorney responded, "Well, we have a quitclaim deed that includes that lot [in both parties' names]." The superior court then observed that while the property division might have to be revisited if Phillip's father was "able to reverse that conveyance," in the meantime "I think I [have] to base [a decision] on the evidence I've got about what property the parties own."

A written order followed, dividing the couple's property. The court found that although Cynthia and Phillip "initially were apparently in agreement that the lot is a marital asset, evidence at trial indicated that the lot is actually owned by Phillip's father. It is not, therefore, included in the marital estate." The court determined that a 60-40 split of the marital property would be equitable and ordered that Phillip make an equalization payment.

Cynthia moved for reconsideration, arguing that there was no evidence to support the finding that the lot was not marital. In response Phillip submitted an affidavit and the quitclaim deed for the property; the deed showed that Phillip's parents had granted the marital home *and* the adjacent lot to both Phillip and Cynthia as "husband and wife." Phillip wrote in his affidavit, however, that his parents had intended to deed only the house, not the lot; that it was Cynthia who filled in the blanks in the deed form; and that she had later acknowledged, after separation, that "the deed was not correct and that she did not intend to take the lot."

The superior court denied Cynthia's motion for reconsideration on this issue. In its written order it explained:

> It is not clear that this property actually belongs to the parties at all. Phillip makes a persuasive showing that the deed may have been in error, and that it is subject to reformation. If this is not the case, it seems clear that it is Phillip's separate property. It was a gift from Phillip's father, and unlike the marital home, it has not been used for marital purposes. It has

been used as a parking lot for Ike's Fuel trucks. Although titled in Cynthia and Phillip's names, its actual use is sufficient to rebut the presumption that this reflects an intent for it to have been a gift to the marital estate.

Cynthia appeals the superior court's finding that the lot is not marital property.

## III.  STANDARDS OF REVIEW

There are three steps in the equitable division of marital assets: "(1) deciding what specific property is available for distribution, (2) finding the value of the property, and (3) dividing the property equitably."[1] This appeal concerns only the first step. The characterization of property as marital or separate "may involve both legal and factual questions."[2] We review the underlying findings of fact as to "the parties' intent, actions, and contributions to the marital estate" for clear error.[3] "[W]hether the trial court applied the correct legal rule in exercising its discretion is a question of law that we review de novo using our independent judgment."[4]

We review the denial of a motion for reconsideration for abuse of discretion.[5]

---

[1]     *Beals v. Beals*, 303 P.3d 453, 458 (Alaska 2013).

[2]     *Id.* at 459.

[3]     *Id.*

[4]     *Id.* (quoting *Hanson v. Hanson*, 125 P.3d 299, 304 (Alaska 2005)) (internal quotation marks omitted).

[5]     *Smith v. Groleske*, 196 P.3d 1102, 1105 (Alaska 2008) (citing *Manelick v. Manelick*, 59 P.3d 259, 262 (Alaska 2002)).

## IV.    DISCUSSION

### A.    The Initial Finding That The Lot Was Not Marital Property Was Clearly Erroneous.

The superior court's initial finding related to the lot's ownership — that it "is actually owned by Phillip's father" — had no support in the evidence presented at trial. First, it was undisputed that Phillip and Cynthia acquired the lot during the marriage, and we presume that all assets a couple acquires during marriage are marital.[6] The parties repeatedly confirmed the lot's status as marital property, both in their written positions before trial and in the evidence they presented at trial. Cynthia listed the lot in her property table; she testified that Phillip's parents had given them both the marital home and the lot;[7] she testified that she wanted Phillip to have "the house and the land" in the property division and to receive an equalization payment herself; and she introduced the appraisal of the lot, without objection. Phillip did not dispute that the lot was marital, writing in his trial brief that "[t]he parties seem to be in agreement that Phillip will receive the marital home given to them by Phillip's mother, and that it has a fair market value of $370,000 plus an additional $75,000 for the adjacent lot." His trial testimony followed the same track; he agreed that he would take both the house and the

---

[6]    *Beals*, 303 P.3d at 460 (citing *Johns v. Johns*, 945 P.2d 1222, 1225 (Alaska 1997)).

[7]    "[W]here title is documented but the documents are not produced, a simple claim of ownership by a spouse is sufficient to bring property within the marital estate, if the trial court finds that spouse's testimony to be credible. In fact, in the great majority of all cases, the requirement that marital or divisible property be owned by the parties is met mostly by the testimony of the parties." Brett R. Turner, *Division of Third-Party Property in Divorce Cases*, 18 J. AM. ACAD. MATRIM. LAW 375, 381 (2003).

adjacent lot in the division of marital property.[8]

The only suggestion at trial that the lot was *not* marital — the telephone conversation relayed by Phillip's attorney following the close of the evidence — was not evidence.[9] The superior court's initial finding that the lot was not marital property was thus clearly erroneous.

**B.    It Was An Abuse Of Discretion To Deny Reconsideration On The Basis Of Phillip's New Evidence Without Allowing Cynthia The Opportunity To Rebut It, And The Findings Made On Reconsideration Were Again Clearly Erroneous.**

When Cynthia moved for reconsideration arguing that the evidence did not support the superior court's finding about the lot, Phillip responded with new evidence: a copy of the deed and his own affidavit, asserting that the lot had been mistakenly conveyed. Cynthia is correct that the submission of new evidence on reconsideration is generally not allowed.[10] While the superior court had the discretion to reopen the case on

---

[8]    Cynthia argues in part that Phillip is bound by his initial characterization of the property as marital. The court, however, was not bound by the parties' characterization of their property, if it properly concluded that the evidence required a different conclusion. *See, e.g., Rostel v. Rostel*, 622 P.2d 429, 431 (Alaska 1981) *overruled on other grounds by Moffit v. Moffit*, 749 P.2d 343, 347 n.3 (Alaska 1988) (noting that court could disregard verbal stipulation of the parties as to the disposition of marital property in order to achieve an equitable division).

[9]    *See, e.g., French v. Jadon, Inc.*, 911 P.2d 20, 29 n.12 (Alaska 1996) (stating that counsel's assertions of the "existence of other fact circumstances that were potentially relevant to [his client's] claims" should not be considered by the court on summary judgment absent "admissible evidence supporting those propositions"); *see also Matter of J.R.S.*, 690 P.2d 10, 20 n.1 (Alaska 1984) (Compton, J., dissenting) ("Statements of counsel in memoranda or argument are not evidence.").

[10]    Generally, "it is not appropriate to present new evidence on a motion for

(continued...)

this issue,[11] it was an abuse of discretion to decide it on the basis of Phillip's new evidence without affording Cynthia a full opportunity to respond.[12]

But even if Phillip's new evidence were properly considered, it does not support the factual findings made on reconsideration. The superior court found first that it was "not clear that this property actually belongs to the parties at all," reasoning that Phillip had persuasively shown "that the deed may have been in error, and that it is subject to reformation." But the deed confirms that the lot was conveyed to the parties jointly, as a married couple: "Richard and Donna Isaak . . . convey[] and quitclaim[] to . . . Phillip and Cynthia Isaak, husband and wife, . . . [a]ll of Lots 63 and 64 [both the home and the adjacent lot]." That the deed "*may* have been in error" does not support a different conclusion, since the legal "presumption that the person with title owns the property . . . may not be overcome by mere surmise and conjecture."[13] The deed proves

---

[10](...continued) reconsideration." *Dunn v. Dunn*, 952 P.2d 268, 271 n.2 (Alaska 1998).

[11] *See Houger v. Houger*, 449 P.2d 766, 773 (Alaska 1969) ("As in the case of a motion for a new trial, the granting or refusing of a motion to reopen a divorce proceeding or to modify the judgment rests in the sound discretion of the trial judge.").

[12] The superior court faulted Cynthia for not asking to reopen the evidence "[i]f she felt surprised by the position taken by Phillip at trial." But the court seems to have had a mistaken recollection of Phillip's position, which at trial was the same as Cynthia's. And while it was within the court's discretion to treat Phillip's submission on reconsideration as a motion to reopen the evidence and as such to grant it, unless it did so Cynthia could reasonably stand on the well-established proposition that the submission of new evidence on reconsideration was inappropriate, *see Dunn*, 952 P.2d at 271 n.2, rather than seeking to submit new evidence of her own where the court had not invited it.

[13] *Pestrikoff v. Hoff*, 278 P.3d 281, 284 (Alaska 2012) (quoting *St. Paul* (continued...)

that regardless of whether Phillip's parents intended to convey the lot to the couple along with the marital home, they actually did convey it. Even if this was a mistake, and even if the deed is therefore subject to reformation, in the meantime the deed is nonetheless presumptive evidence that the lot is owned by both Phillip and Cynthia.

The superior court found alternatively that if the lot *had* been conveyed, "it seems clear that it is Phillip's separate property." The court reasoned that the lot "was a gift from Phillip's father, and unlike the marital home, it has not been used for marital purposes," but rather for parking trucks belonging to Phillip's father's business — an actual use that "[was] sufficient to rebut the presumption that [the deed] reflect[ed] an intent for it to have been a gift to the marital estate."[14] But the burden was on Phillip to prove that the property was separate,[15] and he never testified, even in his post-trial affidavit, that the lot belonged to him alone. It was his position that his parents had not intentionally transferred the lot at all.

Nor is the presumption that the jointly held lot was marital property rebutted by its actual use as a parking place for trucks belonging to Ike's Fuel, the family business. This use of the lot was undisputed at trial, when both parties nonetheless assumed the lot

---

[13](...continued)
*Church, Inc. v. Bd. of Trs. of the Alaska Missionary Conference of the United Methodist Church, Inc.*, 145 P.3d 541, 554 (Alaska 2006)) (internal quotation marks omitted).

[14]     *See Beals v. Beals*, 303 P.3d 453, 460 (Alaska 2013) ("[P]roperty transferred into joint title is presumed to be a gift to the marital estate . . ." (quoting 1 BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 5:43, at 476 (3d ed. 2005)) (internal quotation marks omitted)).

[15]     *Schmitz v. Schmitz*, 88 P.3d 1116, 1128 (Alaska 2004) ("The party seeking to establish that the property is separate always bears that burden of proof." (citing BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 5.23, at 266 (2d ed. 1994))).

was marital property. Both Phillip and his father worked for Ike's Fuel; parking the business's trucks on the lot appears to be no more inconsistent with ownership by Phillip and Cynthia than it would be with ownership by Phillip's parents.

We thus conclude that the further factual findings made on reconsideration about the lot's status as non-marital property were also clearly erroneous.

## V.     CONCLUSION

We REVERSE the superior court's finding that the lot is not marital property and REMAND for further proceedings consistent with this opinion.