**Quinten Kaye ARNDT, Appellant and Cross–Appellee,**

v.

**Ginger Lea ARNDT, Appellee and Cross–Appellant.**

Nos. S–2728, S–2738.

Supreme Court of Alaska.

July 28, 1989.

Jack D. Clark and Douglas Rolfe Smith, Law Office of Jack D. Clark, Anchorage, for appellant/cross-appellee.

Barbara A. Norris, Burr, Pease & Kurtz, for appellee/cross-appellant.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

OPINION

MATTHEWS, Chief Justice.

Appellant/Cross–Appellee Quinten Kaye Arndt ("Quinten") and Appellee/Cross–Appellant Ginger Lea Arndt ("Ginger") were married on April 27, 1974. They have two children, Adrienne Marie Arndt and Amanda Annette Arndt. Ginger and Quinten were divorced on August 15, 1986.

The decree provided for shared custody of the children, but ordered Quinten to pay child support to Ginger in the amount of $500 per child per month, or $1,000 per month. The court based this decision on the "relative economic power of each of the parties...." The court issued its order with knowledge that Quinten would have actual custody of the children for approximately half of the time. Neither party appealed from the decree.

The trial court divided Quinten and Ginger's property unequally. However, the court explained that the unequal division

resulted from the fact that it was allowing Quinten to keep his interest in certain closely-held family businesses, which would be worthless to Ginger:

> [T]he large value associated with these business interests is due primarily to Quinten's fortuitous association with his family. And although these business interests have great value to him personally as an Arndt family member, the transfer of these interests to someone outside the Arndt family business unit would substantially decrease their value.

The court did not award spousal support payments to Ginger. It did, however, place a heavier burden of child support on Quinten in recognition of the superior economic power that he derived from the Arndt family businesses.

Ginger subsequently moved to Texas, and the parties agreed to modify the custody arrangement to accommodate this change by alternating years instead of weeks. The court approved this modification.

On September 15, 1987 Quinten made a motion to modify his child support obligation. In his supporting affidavit Quinten stated the following reasons, among others, for his motion: (1) the above-mentioned change in the parties' custody arrangement; (2) a dramatic decrease in his annual income, from $52,000 to approximately $24,000; and (3) an increase in Ginger's income. Quinten stated that, as a result of this income reduction of over fifty percent, during the years in which he has custody of the children he would merely "break even" assuming no support payments to Ginger at all. In short, Quinten alleged that the support payments far exceeded his ability to pay. Finally, Quinten cited to Ginger's alleged increased income and her lower costs of living in Texas.

Ginger opposed Quinten's motion and filed a contingent motion to establish a spousal support obligation on her behalf. In essence, Ginger argued that Quinten's existing child support obligation is, at least partially, some form of disguised spousal support, granted originally by the trial court to offset its unequal distribution of marital property.

The trial court denied Quinten's motion, finding no material and substantial change in circumstances. The court found that the new child custody arrangement was not a substantial change, in that the parties still had "basically half and half custody as far as the time period the children were with each parent...." The court also found that Quinten had not shown any material and substantial change of his economic circumstances. This conclusion was based not on Quinten's change in income, but rather on the court's interpretation of its original order. The court stated:

> This court recognized in the original findings and conclusions that were entered in support of the decree that the substantial assets that were awarded to Quinten were in the construction business that his family owned. Construction businesses by their very nature are subject to the vicissitudes of changing economic cycles and those possibilities were recognized when the Court awarded those substantial assets that were much more than what were awarded to Ginger Arndt. At the time of the original order Quinten Arndt was awarded these assets and then those assets together with the income that he had at the time were such that it was in the best interest of the children to award child support to Ginger Arndt in the sum of $500 per child per month and that order will continue.

Having decided this question, the court denied Ginger's contingent motion for spousal support.

The court also found that Quinten was entitled to a set-off of $3,000 against past due child support. Finally, the court ordered the parties to bear their own attorneys' fees and costs, but did not explain why it chose not to make an award to one party.

■ Trial courts have broad discretion in deciding whether to modify child support orders. *Patch v. Patch,* 760 P.2d 526 (Alaska 1988). This court will not find an abuse of discretion unless it has a "definite and firm conviction" based on the whole

record that a mistake has been made. *Id.; Houger v. Houger,* 449 P.2d 766, 771 (Alaska 1969).

This court restated the general rule as to modification of a child support order in *Patch:*

> For the trial court to modify a support order, the movant must show by a preponderance of the evidence that, subsequent to the original order, there has been a material and substantial change in circumstances affecting the movant's ability to pay. *Curley v. Curley,* 588 P.2d 289, 291 n. 9 (Alaska 1979). "The change ordinarily must be more or less permanent rather than temporary." *Id.* at 291. In determining whether a child support obligation should be decreased the court must consider not only the needs and financial abilities of both parents but also the needs of the children. *Id.* at 292. "[T]he trial court must examine the financial situation of both parents and determine whether the equities justify placing a greater burden on one and a corresponding lesser burden on the other." *Id.*

*Patch,* 760 P.2d at 529.

■ Quinten made a convincing showing of changed circumstances. He demonstrated an income decrease of over 50%, an increase in Ginger's income, and a significant change in child custody. Taken together, these facts amount to a "material and substantial" change in circumstances sufficient to warrant modification of the child support order. Accordingly, we remand this case with instructions to the trial court to consider the motion to modify on its merits. Civil Rule 90.3,[1] which provides guidelines for child support awards, will apply to such consideration.

■ Ginger filed a contingent motion in the trial court to establish a spousal support obligation on her behalf. She argues that the original child support award was, at least in part, a form of disguised alimony. There is no support for Ginger's position, and the trial court properly denied her motion. The trial court's original order provided merely:

> That Quinten Kaye Arndt shall pay One Thousand ($1,000.00) Dollars per month child support for each and every month. That said child support payments shall be secured by an insurance guarantee or an account consisting of capital available to meet said child support obligations or by a testamentary provision sufficient to meet the obligation.

Nowhere does the court mention a spousal support obligation.

The fact that the court's property division was unequal does not show, as Ginger contends, that the court intended the child support obligation to constitute alimony. As set out above, the court explained to the parties that the unequal division of marital assets reflected the court's subjective valuation of Quinten's closely-held family businesses. Although the court apparently based its child support award on Quinten's greater economic power, it does not allude to treatment of the child support award as an off-set for the division of marital property.

It probably would have been error for the trial court to do what Ginger contends that it did. We have held that awarding one spouse a greater share of the marital property simply to ease his or her burden of child support constitutes reversible error. *Houger v. Houger,* 449 P.2d 766, 771 (Alaska 1969). The policy underlying *Houger* is equally applicable in this case. Division of marital property by the court is separate and distinct from questions of child support. Property divisions are final judgments which can be modified only under limited circumstances, *O'Link v. O'Link,* 632 P.2d 225, 228 (Alaska 1981), whereas child support awards can be changed periodically under much more liberal standards. One should not be a trade-off for the other.

This court will not look beyond the terms of the trial court's original order to reclassify the award. The court explained its unequal division of property. Neither par-

---

1. Effective August 1, 1987.

ty saw fit to challenge this division, and Ginger will not be heard now to do so.

■ Ginger challenges the trial court's award of a $3,000 off-set to Quinten against past due child support, alleging that this issue was not properly raised. The record does not support this argument.

Quinten's motion to modify referenced his affidavit of September 10, 1987. The affidavit, which was filed along with the motion, specifically addressed the offset issue. In the affidavit Quinten stated his desire to offset his child support obligation by approximately $3,342, and provided supporting documentation. Further, although Ginger's attorney objected to evidence as to this issue at trial, the court overruled the objection. The parties thus litigated the question of how much money Quinten had paid in "indirect" child support, and of how much money was actually presently due from Quinten to Ginger.

Ginger's objection to the trial court's grant of an offset therefore lacks merit. The trial court's order is affirmed in this respect.

Ginger challenges the trial court's failure to grant her attorney's fees and costs under Civil Rule 82. Because this case must be remanded on the merits, this issue is moot.

The trial court's denial of the motion to modify child support is REVERSED and this case is REMANDED for a determination of that motion. In all other respects the trial court is AFFIRMED.