**Maureen T. KEATING, Mother of Daniel Keating, Appellant/Intervenor,**

**v.**

**Terence J. TRAYNOR, State of Alaska, Child Support Enforcement Division, Appellees.**

**No. S–4032.**

Supreme Court of Alaska.

June 30, 1992.

Maureen T. Keating, pro se.

Deborah E. Behr, Asst. Atty. Gen., Charles E. Cole, Atty. Gen., Juneau, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

BURKE, Justice.

In this child support appeal, Maureen Keating, a *pro se* litigant, challenges the trial court's modification order. The order, which was prompted by a motion from the Child Support Enforcement Division (CSED), provided for less on-going support than the father, Terence Traynor, had earlier agreed to pay.[1] Keating argues that the

---

1. The trial court's original support order, which    was based on a settlement agreement between

trial court should have classified Traynor's future permanent fund dividends as on-going support in accordance with the stipulation she and Traynor executed in May 1989. Keating also claims that "[n]o evidence was introduced as to Traynor's ability to pay" and that the "order was entered without due regard [for her child's] needs." Brief of Appellant at 10.

CSED argues that Keating is not a proper party to bring this appeal because she assigned her support rights to the agency, and the trial court never formally granted her request to intervene in the action. The agency also claims that the trial court acted within its discretion in modifying its earlier child support order without making findings of fact for the record.

■ As a threshold matter, we hold that Keating's appeal is permissible because she clearly had a right to intervene[2] and, as a *pro se* litigant, she should have been instructed by the trial court on the proper procedures for intervention. In a letter to the trial judge, Keating sought permission to intervene and specifically asked the judge to inform her whether she had to "make this request by a formal pleading." Under *Breck v. Ulmer*, 745 P.2d 66 (Alaska 1987), a trial judge has an obligation to "inform a *pro se* litigant of the proper procedure for the action he or she is obviously attempting to accomplish." *Id.* at 75. Under these circumstances, Keating must be deemed a party to the action.

■ Nevertheless, appellate review of the trial court's modification order is hampered by the trial court's failure to make factual findings. *See* Civil Rule 52(a); *see also Headlough v. Headlough*, 639 P.2d

1010, 1014 (Alaska 1982) (trial court's decision to increase child support payments pursuant to motion to modify divorce decree was deficient because the court included no findings of fact supporting its decision). The trial court has a duty to make findings of fact sufficient to provide this court with a clear understanding of the basis of the award. *See State v. I'Anson*, 529 P.2d 188, 197 (Alaska 1974); *see also Ogard v. Ogard*, 808 P.2d 815, 816 (Alaska 1991). The lack of findings in this case is a defect which, standing alone, requires a remand.

■ Moreover, it appears that the trial court modified the support award without following Civil Rule 90.3 guidelines. The trial judge never once referred to Civil Rule 90.3 in any of his child support orders nor does it appear that the guidelines were followed. Keating and Traynor arrived at the $1,500 *plus* permanent fund dividend level of on-going support in their private stipulation. The fact that the trial judge used the $1,500 figure as the amount of on-going support in the modification order indicates that the award was not calculated based on Traynor's current income.

■ We have held that a parent may not waive the requirements of Rule 90.3 by private agreement. *Bergstrom v. Lindback*, 779 P.2d 1235, 1237–38 (Alaska 1989) (citing *Cox v. Cox*, 776 P.2d 1045, 1048 (Alaska 1989)). In *Cox*, we explicitly stated that the "rule is designed to apply to all awards of child support, whether agreed to by the parties or contested." *Cox*, 776 P.2d at 1047. Therefore, it was error for the court to simply adopt the $1,500 figure without further examination.

Keating and Traynor, provided for on-going support in the amount of $1,500 for each six-month period *plus* Traynor's yearly permanent fund dividend. The modification order reduced Traynor's on-going child support obligation to $1,500 for each six-month period.

2. Once CSED sought to modify the prior support order, partly to insure that the state would be reimbursed before any arrearages would be paid, Keating's interests diverged from CSED. She had an interest in arrearages as well as in

obtaining the highest level of on-going support for her son. Based on our review of CSED's supporting memorandum, we conclude that this interest was inadequately represented by CSED and could have been impaired as a consequence of the proposed modification. Keating's informal request for intervenor status, written within a few days of CSED's motion to modify the support award, must be considered timely. Consequently she meets the requirements for intervention of right. *See* Civil Rule 24(a).

Accordingly, we remand this case so that the trial court may recalculate the child support obligation pursuant to Rule 90.3 and make appropriate findings of fact.[3] The trial court should also formally grant Keating intervenor status.

The modification order is VACATED, and the case is REMANDED with instructions.

---

**3.** Keating also argues in this appeal that Traynor's permanent fund dividends should be applied to reduce child support arrearages before the state is allowed to reimburse itself for past public assistance. She maintains that any other distribution is violative of federal law. As to money that the state has already recovered, Keating's argument lacks merit. Our statutes make clear that once on-going support is properly established, any excess amount can be applied to reimburse the state *before* arrearages are paid because an Aid to Families with Dependent Children recipient assigns "all rights to accrued and continuing support that the applicant ... may have sought from all sources." AS 47.25.345 (1990).

In *In re Stovall,* 721 F.2d 1133 (7th Cir.1983), the Seventh Circuit, in resolving a bankruptcy dispute, ruled that a state assignment statute (substantially similar to AS 47.25.345) which assigns both arrearages accrued at the time of assignment and support payments which become due after assignment was "entirely consistent with [the circuit court's] reading of 42 U.S.C. § 602(a)(26)." *Id.* at 1135. The court further commented that "Congress intended the total support obligation to be assigned to the states." *Id.* We conclude, therefore, that CSED's prior disbursement practices were entirely consistent with state and federal law. However, applicable state law has recently been amended to give child support arrearages which have accrued since the termination of public assistance priority over state reimbursement. *See* AS 25.27.130(d) (1991). Thus, as to amounts recovered after January 1, 1992, the effective date of this amendment, CSED's disbursement priorities will have to be modified if Keating is no longer receiving public assistance.