**Robert E. BUNN, Appellant,**

v.

**M. Kay HOUSE, f.k.a. Bunn, Appellee.**

**No. S-7249.**

Supreme Court of Alaska.

April 11, 1997.

ments that attack the merits of the Board's deci-

Robert E. Bunn, Salt Lake City, UT, pro se.

Patrick W. Conheady, Olmstead & Conheady, Juneau, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

*OPINION*

MATTHEWS, Justice.

In this divided custody case the trial judge awarded child support using a formula that required the father to pay approximately $154 monthly. No appeal was taken. Four years later the parties' incomes had not significantly changed but a different judge modified the award to $399 per month based on a different formula. The threshold question is whether the modification was appropriate. Because Alaska Rule of Civil Procedure 90.3(h)(1) requires a material change of circumstances before a child support order may

sion.

be modified and there was no such change, we answer in the negative.

## I. *FACTS AND PROCEEDINGS*

Robert E. Bunn and M. Kay House were married in 1980 and divorced in 1990. They have three children. On March 1, 1991, Judge Cranston of the superior court in Kenai entered findings of fact and conclusions of law and an order pertaining to child support and custody. The court awarded House custody of the two younger children and placed the older child in the custody of Bunn. Bunn was required to pay child support in the sum of $675.90 a month. Bunn timely moved for reconsideration of the child support award. Over opposition, the court on October 29, 1991, modified the award.[1] Based on a formula derived from Civil Rule 90.3(a)(2), Bunn was ordered to pay 27% of his adjusted income to House for child support, and House was ordered to pay 20% of her adjusted income to Bunn. "[T]he difference in the two amounts of child support shall be paid by the party with the greater obligation to the party with the lesser obligation." The result was a net payment of approximately $154 per month from Bunn to House. No appeal was taken.

Venue was then changed to Juneau. In 1995, House filed a motion to modify the child support award, proposing a new method for calculating Bunn's child support obligation. Under this method Bunn owed $387 per month in child support. The motion pointed out that the increase was "151% greater than the current order."

Bunn, appearing without counsel, opposed the motion on a number of grounds. He argued, among other things, that the order of October 29, 1991, should control.[2]

On June 8, 1995, Judge Carpeneti of the superior court in Juneau granted House's motion. Using the method of calculation proposed by House, he found that Bunn owed $399 per month in child support.[3] Because the increase over the amount owed under the method used by Judge Cranston in the October 29, 1991 order "exceeds the 15 percent threshold requirement for the court to presume a material change of circumstances" under Civil Rule 90.3(h)(1), a material change of circumstances was found to have occurred.

Judge Carpeneti imputed an annual adjusted income to Bunn of $28,438.46.[4] House's annual adjusted income was $28,423.46. Judge Cranston in the order of October 29, 1991, found Bunn's annual adjusted income to be $25,032. House's income was found to be "comparable or equal." She filed a financial declaration dated May 17, 1991, showing an adjusted annual income of $24,482.28.

Bunn appeals. He again argues that the court should have adhered to the prior child

---

1. House asserts in her brief that the motion for reconsideration was not opposed, but the record shows that it was.

2. Bunn argued:

   CSED [The Child Support Enforcement Division, which represented House with respect to the motion to modify] has made a mistake not basing their calculations on the most current order and amended decree, both dated October 29, 1991, as they pertain to child support....
   .... CSED has completely ignored the order dated October 29, 1991 where it is order [sic] that the plaintiff pay 20% of her adjusted gross income to defendant, and defendant pays 27% of his adjusted gross income to plaintiff.
   ....
   .... The court used Rule 90.3(a) when it issued its order dated October 29, 1991 and there has not been any changes in the amount of visitation or custody since then.
   Bunn concluded:

   The defendant moves this court to deny the plaintiff's Motion to Modify Child Support. The defendant moves this court to order Child Support Enforcement Division to continue to enforce the current order. If and when a modification is requested, the modification should be based on Civil Rule 90.3(a) using current and accurate information supplied by both parties involved without any zealous and erroneous interpretations of the facts by CSED. Until that time the current order should be enforced.

3. The difference between the amount asked for by House and that awarded by the superior court is explained by different rounding methods.

4. Bunn had been attending school, and thus his actual income was lower. The court used Bunn's 1991 income, stating that "Bunn does not have the unilateral right to further his career ambitions at the expense of his obligation to support his children."

support award: "[T]he court erred by ignoring the prior orders. . . . The current court used the same facts and the same rules as had the prior court but reached a conclusion that is completely different from that of the prior court."

House argues that the difference between the amounts of child support calculated by Judge Carpeneti and Judge Cranston is in itself a material change of circumstances which authorizes the modification. She contends that the difference came about because of "the error of the Kenai Court's order of October 29, 1991 which misapplied the correct formula for calculating support in this type of case." She does not argue that the incomes of the parties or the custodial arrangements for the children had significantly changed in the interim.

## II. DISCUSSION

Alaska Rule of Civil Procedure 90.3 provides mathematical guidelines for child support awards (1) in cases where one parent has sole or primary physical custody of the parties' children and (2) where the parties share physical custody.[5] The assumption of the formulas for sole or primary custody and shared custody is that children stay together. Sometimes this is not the case. Both parents may have sole or primary physical custody of different children.[6] Or, custody of one or more children may be shared while other children are subject to primary or sole custody. In such cases Rule 90.3 does not provide a governing formula.

The commentary to Civil Rule 90.3 suggests a method for divided custody cases which applies, in the first instance, a formula similar to that set forth in Civil Rule 90.3(b) pertaining to shared custody.[7] The commentary formula is as follows:

> The first step in determining support in such a divided custody arrangement is to apply the usual shared custody formula in 90.3(b) by averaging the time all children will spend with each parent. For example,

5. Civil Rule 90.3(a)(2), relating to sole or primary physical custody, provides:

> (a) **Guidelines—Sole or Primary Physical Custody.** A child support award in a case in which one parent is awarded sole or primary physical custody as defined by paragraph (f) will be calculated as an amount equal to the adjusted annual income of the non-custodial parent multiplied by a percentage specified in subparagraph (a)(2).
>
> . . . .
>
> (2) The percentage by which the non-custodial parent's adjusted income must be multiplied in order to calculate the child support award is:
>
> (A) 20% (.20) for one child;
> (B) 27% (.27) for two children;
> (C) 33% (.33) for three children; and
> (D) an extra 3% (.03) for each additional child.

Civil Rule 90.3(b) provides the formula for shared physical custody. It provides in relevant part:

> (b) **Shared Physical Custody.** A child support award in a case in which the parents are awarded shared physical custody as defined by paragraph (f) will be calculated by:
>
> (1) Calculating the annual amount each parent would pay to the other parent under paragraph (a) assuming the other parent had primary custody.
>
> (2) Multiplying this amount for each parent by the percentage of time the other parent will have physical custody of the children. However, if the court finds that the percentage of time each parent will have physical custody

will not accurately reflect the ratio of funds each parent will directly spend on supporting the children, the court shall vary this percentage to reflect its findings.

> (3) The parent with the larger figure calculated in the preceding subparagraph is the obligor parent and the annual award is equal to the difference between the two figures multiplied by 1.5. However, if this figure is higher than the amount of support which would be calculated under paragraph (a) assuming sole or primary custody, the annual support is the amount calculated under paragraph (a).

6. Civil Rule 90.3(f)(3) defines this as "divided custody":

> (3) **Divided Custody.** Parents have divided custody under this rule if one parent has sole or primary physical custody of one or more children of the relationship and the other parent has sole or primary custody of one or more other children of the relationship.

7. The commentary was prepared by the Child Support Guidelines Committee appointed by this court. It has not been adopted or approved by this court. *Eagley v. Eagley*, 849 P.2d 777, 779 (Alaska 1993). Nonetheless, this court often relies upon the commentary for guidance in child support matters. *See Coghill v. Coghill*, 836 P.2d 921, 926 (Alaska 1992); *Ogard v. Ogard*, 808 P.2d 815, 819 (Alaska 1991). We have not followed it in every instance, however. *See Eagley*, 849 P.2d at 781 (rejecting commentary treatment of real estate depreciation).

if one child will live with the father all of the time and two with the mother, support is calculated as if all the children spent one-third of the time with the father. The appropriate percentage figure for all the children (in the example, 3 or 33%) then is applied.[8]

Civil Rule 90.3 commentary, § VI.B.3.

In this case Judge Carpeneti used the commentary formula. We set forth his cal-culations in the footnote.[9] As detailed above, Judge Cranston used a method offsetting the parties' obligations, calculated under the for-mula expressed in Civil Rule 90.3(a)(2). Had Judge Carpeneti applied Judge Cranston's formula to the adjusted annual income of the parties found to exist in 1995, the monthly child support owed by Bunn would be ap-proximately $166.[10] This is an increase of

[8]. We have neither approved nor disapproved the use of this formula. However, the formula could also apply to cases where some children of a marriage are in shared custody and some are in primary custodial arrangements. We have had occasion to adjudicate two such cases. In *Coats v. Finn*, 779 P.2d 775, 776 (Alaska 1989), we approved a child support award which appeared to have been based on either of two alternative methods, neither of which was the commentary formula. More recently in *Turinsky v. Long*, 910 P.2d 590, 596–7 (Alaska 1996), we indicated that a third method, also different than the commen-tary formula, should have been used.

[9].

| | |
|---|---|
| $28,438.46 | (Bunn's income) |
| .33 | (Civil Rule 90.3(a) multiplier for 3 children) |
| $9,384.69 | (Amount Bunn would owe House if she had all 3 children 100% of the time) |
| .67 | (Civil Rule 90.3(b) multiplier, used because House has custody of 2 children 100% of the time) |
| $6,287.74 | |
| $28,423.46 | (House's income) |
| .33 | (Civil Rule 90.3(a) multiplier for 3 children) |
| $9,379.74 | (Amount House would owe Bunn if he had all 3 children 100% of the time) |
| .33 | (Civil Rule 90.3(b) multiplier, used because Bunn has custody of 1 child 100% of the time) |
| $3,095.31 | |

The amounts are offset:

| | |
|---|---|
| $6,287.74 | (Bunn's obligation) |
| $3,095.31 | (House's obligation) |
| $3,192.43 | (The difference) |
| 1.5 | (Civil Rule 90.3(b)(3) multiplier) |
| $4,788.65 | (Amount Bunn to pay House per year) |
| ÷ 12 | (Months) |
| $399.05 | Monthly obligation of Bunn to House |

[10]. Using Judge Cranston's formula, the calculations are as follows:

| | |
|---|---|
| $28,438.46 | (Bunn's income) |
| .27 | (Civil Rule 90.3(a) multiplier, used because House has sole custody of 2 children) |
| $7,678.38 | (Total yearly child support Bunn owes House) |
| $28,423.46 | (House's income) |
| .20 | (Civil Rule 90.3(a) multiplier, used because Bunn has sole custody of one child) |
| $5,684.69 | (Total yearly child support House owes Bunn) |

The amounts are then offset:

| | |
|---|---|
| $7,678.38 | (Bunn's obligation) |
| $5,684.69 | (House's obligation) |
| $1,993.69 | (Amount Bunn to pay house per year) |
| ÷ 12 | (Months) |
| $166.14 | Monthly obligation of Bunn to House |

about $12 per month, or slightly less than 8%. If Judge Cranston, in 1991, had applied the commentary formula, Bunn's obligation would have been approximately $359 per month.[11] If this had occurred, the increase in child support in 1995 would have been $40 per month, or 11.1%.

Civil Rule 90.3(h)(1) states:

A final child support award may be modified upon a showing of a material change of circumstances as provided by state law. A material change of circumstances will be presumed if support as calculated under this rule is more than 15 percent greater or less than the outstanding support order. . . .

The 15% threshold is not satisfied when either the formula used by Judge Cranston or that used by Judge Carpeneti is consistently applied to the parties' 1991 and 1995 incomes. Only by changing formulas is the threshold exceeded, and that result occurs even if the parties' incomes remain constant.

Civil Rule 90.3(h)(1), recognizing that courts have a special duty with regard to the support of children whose parents have divorced, provides an exception to the general principle that final judgments should not be disturbed. Some courts enunciate this exception in terms of res judicata. That is, they hold that a child support decree is res judicata unless and until there is a material change of circumstances which opens the door to modification. *McKenna v. McKenna,* 928 S.W.2d 910, 913–14 (Mo.App.1996); *O'Callaghan v. O'Callaghan,* 515 N.W.2d 821, 823 (N.D.App.1994); *Smith v. Smith,* 793 P.2d 407, 410 (Utah App.1990). While we believe that motions to modify child support, under Alaska law, do not technically raise res judicata concerns,[12] the principle of finality is a sound one. As Professor Clark wrote:

[The requirement of a change in circumstances places] greater emphasis on the need for finality in the tension which necessarily arises between modification and the policies underlying res judicata. It also reflects the need to achieve some reduction in the level of divorce litigation

**11.** The commentary formula is applied to the parties' 1991 incomes as follows:

| | |
|---|---|
| $25,032.00 | (Bunn's income) |
| .33 | (Civil Rule 90.3(a) multiplier for 3 children) |
| $8,260.56 | (Amount Bunn would owe House if she had all 3 children 100% of the time) |
| .67 | (Civil Rule 90.3(b) multiplier, used because House has custody of 2 children 100% of the time) |
| $5,534.58 | |
| $24,482.28 | (House's income) |
| .33 | (Civil Rule 90.3(a) multiplier for 3 children) |
| $8,079.15 | (Amount House would owe Bunn if he had all 3 children 100% of the time) |
| .33 | (Civil Rule 90.3(b) multiplier, used because Bunn has custody of 1 child 100% of the time) |
| $2,666.12 | |

The amounts are offset:

| | |
|---|---|
| $5,534.58 | (Bunn's obligation) |
| $2,666.12 | (House's obligation) |
| $2,868.46 | (The difference) |
| 1.5 | (Civil Rule 90.3(b)(3) multiplier) |
| $4,302.69 | (Amount Bunn to pay House per year) |
| ÷ 12 | (Months) |
| $358.56 | Monthly obligation of Bunn to House |

**12.** This is so because a motion to modify is not a new action. It, rather, asks the court to re-open the final judgment in the same action.

which now raises serious problems of judicial administration in nearly all states.

2 Homer H. Clark, Jr., *The Law of Domestic Relations in the United States* § 18.2, at 370–71 (2d ed. 1987). A party should not be allowed to relitigate the same facts in the hope of gaining a more favorable result. There must be a material change of circumstances before a support order can be modified.

Our opinions recognize that certain fact changes occurring after the entry of a judgment may constitute a material change in circumstances. Such changes often take the form of shifts in the needs of the children or a change in one or both parents' level of income. *Patch v. Patch,* 760 P.2d 526, 529 (Alaska 1988); *Curley v. Curley,* 588 P.2d 289, 292 (Alaska 1979). A change in custodial or visitation patterns may also constitute a material change in circumstances. *E.g., Arndt v. Arndt,* 777 P.2d 668, 670 (Alaska 1989).

In addition to factual changes, certain changes in the law can constitute material changes of circumstances permitting the modification of child support orders. "For the purposes of a motion to modify or terminate child support, the adoption or enactment of guidelines or a significant amendment to guidelines for determining support is a material change in circumstances, if the guidelines are relevant to the motion." AS 25.24.170(b). It was for this reason that we held the adoption of Civil Rule 90.3, itself, to be a material change in circumstances allowing the recalculation of child support obligations embodied in orders entered before Rule 90.3 came into existence. *Charlesworth v. State, Child Support Enforcement Div. ex rel. Charlesworth,* 779 P.2d 792, 793–94 (Alaska 1989).

Further, we have recognized an exception to the requirement that there be a change of circumstances before a support order can be modified if the moving party can show that, although there has been no change in the facts or law, the needs of the children are not being met by the original order. *Headlough v. Headlough,* 639 P.2d 1010, 1012–13 (Alaska 1982). This exception is predicated on the idea that the court's primary duty is to see to the well being of the children of a broken marriage. *Id.; see also Neil v. Neil,* 648 N.Y.S.2d 740, 741 (N.Y.App.Div.1996) (recognizing same exception).

Based on this review of prior case law, it is evident that a change in a party's legal theory is not a change of circumstances which warrants the modification of a child support order. House's new method for determining the proper level of child support was not based on any change in the facts or the law. It was merely a different theory, one which could have been presented in the 1991 adjudication.

House's position on appeal—that the new method of calculation yields an amount of support sufficient to trigger the 15% "per se" material change of circumstances embodied in Civil Rule 90.3(h)(1)—lacks merit. The "15% rule" is a rule of *materiality,* not a definition of what constitutes a change of circumstances. There must be a change of circumstances, either factual or legal. If such exists, whether the change is material can be gauged by asking if it would result in a 15% change in the level of support. Where the change is factual, the same method of calculating support must be applied to the old and new facts.[13] Otherwise, the materiality of the factual change cannot be measured.

If House believed that the superior court erred in entering its October 1991 order, she was free to appeal that order to this court. Absent an appeal, she might have made a motion for reconsideration resting on one of the grounds enumerated in Civil Rule 60(b). *Dewey v. Dewey,* 886 P.2d 623, 626–27 (Alaska 1994); *Propst v. Propst,* 776 P.2d 780, 783 (Alaska 1989). However, the motion in this case was made pursuant to Civil Rule 90.3 and "the change in circumstances test relates to changes in external facts, not to

---

13. We need not decide in this case whether the doctrine of the law of the case requires that the method on which the extant order is based be used. *See Rooney v. Rooney,* 914 P.2d 212 (Alaska 1996). As shown above, neither Judge Cranston's nor Judge Carpeneti's formula produces a 15% change when applied consistently to the parties' 1991 and 1995 incomes.

mistakes." *Larson v. Larson*, 661 P.2d 626, 628 (Alaska 1983).

## III. CONCLUSION

The fact that one method of child support calculation yields a result more than 15% different from another method used in an extant order is not a material change of circumstances. To so hold would mean the end of the principle of finality in this area of law. Because the record does not show a change in circumstances which would allow the superior court to modify the 1991 order, we hold that the superior court abused its discretion in modifying the order.

The modified order entered on June 8, 1995, is VACATED and this case is RE-MANDED for proceedings consistent with this opinion.