NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JOHN B., | ) |
| | ) Supreme Court No. S-17633 |
| Appellant, | ) |
| | ) Superior Court No. 3AN-17-06683 CI |
| v. | ) |
| | ) MEMORANDUM OPINION |
| ALISA B., | ) AND JUDGMENT* |
| Appellee. | ) |
| | ) No. 1816 – February 10, 2021 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Dani Crosby, Judge.

Appearances: John B., pro se, Anchorage, Appellant. Notice of nonparticipation filed by Alisa B., Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, Carney, and Borghesan, Justices.

## I.     INTRODUCTION

This is a second appeal in a custody matter.[1]  While the first appeal was pending, the father moved to modify legal custody.  The superior court denied his motion

---

\*        Entered under Alaska Appellate Rule 214.

[1]        The mother appealed the superior court's modification order awarding primary physical custody of the children to the father. *Burns v. Burns*, 466 P.3d 352, 355 (Alaska 2020).

without a hearing, and then denied his motion for reconsideration. The father appeals.[2] Because the superior court did not err when it concluded that the father failed to demonstrate a change in circumstances, we affirm.

## II.    FACTS AND PROCEEDINGS

### A.    Background Facts And Jay's Previous Motion To Modify[3]

Alisa and John (Jay) B. married in 2006 and divorced in 2017. They have three children, two daughters and a son. At the conclusion of their divorce trial in December 2017 the court issued its custody order on the record. The order granted joint legal custody to both parents and awarded Alisa primary physical custody and Jay visitation. Alisa then moved to New York with the children.

In late February 2018 Alisa admitted the parties' son to a mental health treatment facility, alleging that he had threatened to stab himself and Alisa. The boy denied making these threats. He remained hospitalized for about two weeks and doctors there prescribed several psychotropic medications for "mood and anger control."

Two months later, in response to the boy's hospitalization, Jay filed a motion requesting that the court award him primary physical custody and return the children to Alaska. Alisa then filed for a temporary order of protection against Jay in New York, claiming that he was "manipulating, harassing and controlling the children . . . via Skype on a daily basis." The New York court granted Alisa sole legal custody in an ex parte order and suspended all contact between Jay and the children. The New York court later conferred with the superior court to determine which state had

---

[2]    The mother is not participating in this appeal.

[3]    We summarize only those facts necessary for our decision. A more complete statement of facts may be found in our previous opinion. *See Burns*, 466 P.3d at 355-59.

jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act,[4] which resulted in the New York court retaining jurisdiction over the protective proceeding, but staying it pending the resolution of the custody case.[5]

After a hearing, the superior court granted Jay's motion to modify custody in January 2019, awarding him primary physical custody and granting Alisa visitation. The court focused on Alisa's misrepresentations to medical professionals and her unwillingness to foster a relationship between Jay and the children. The court concluded her misrepresentations "ha[d] the potential to pose unacceptable risks to [their] young [son]." The court also expressed "great concerns" about Alisa's seeking an "unjustified" no contact order in New York and its impact on an open and loving relationship between the children and their father. The court found that Alisa's beliefs about Jay's behavior were "not consistent with reality" and that as a result, her "ability to care for the children's physical, emotional, mental and social needs [was] called into question." The court noted that it had given "serious consideration" to granting legal custody solely to Jay, but "hope[d] for better decisions going forward" and retained its joint legal custody award.

---

[4]    *See* AS 25.30.450 ("If . . . the court determines . . . a proceeding to modify . . . is pending in a court of another state having jurisdiction . . . under provisions substantially similar to [Alaska's UCCJEA], the enforcing court shall immediately communicate with the modifying court."); AS 25.30.360 (allowing court with jurisdiction to "decline to exercise its jurisdiction at any time if . . . it is an inconvenient forum . . . and . . . court of another state is a more appropriate forum.").

[5]    In February 2019 the New York court declined to issue a new order of protection after the initial order expired.

After Alisa appealed the superior court's order, we affirmed the superior court's decision in June 2020.[6]

### B. Jay's Second Motion To Modify

In June 2019, while Alisa's appeal was pending, Jay filed an expedited motion to modify visitation and legal custody.[7] Jay's motion sought sole legal and physical custody, an increase in Alisa's contribution to medical and travel expenses to 60%, and that Alisa's visitation be limited to supervised visits in Alaska.

Jay based his motion on medical records for their son and older daughter, which he received after the order modifying custody. Jay alleged that he had requested them before the modification hearing and that Alisa withheld them in bad faith. He also argued that the records demonstrated that Alisa had misrepresented both children's mental heath in more ways than had been revealed during the earlier proceedings. And he argued that the records showed that Alisa had manipulated and mistreated the children. Finally he argued that he was afraid that Alisa was planning to keep the children in New York after visitation.

Jay argued that their son's medical records revealed that the boy was never homicidal or suicidal. Jay attached affidavits from himself and a neighbor supporting his motion. In his affidavit Jay stated that the records showed that the boy denied having a knife and making threats and believed he was hospitalized because his mother "didn't want to deal with [the boy] anymore" and "needed a break." The neighbor's affidavit stated that the boy had told her that his "mom put me in the hospital" and "she hurt my

---

[6]    *Burns*, 466 P.3d at 355.

[7]    Although both parents had been represented by counsel at the hearing, Jay now represents himself. He initially filed a motion for interim physical and legal custody and a motion to modify custody in May 2019, but the court found those filings to be moot and allowed Jay to file a motion to modify visitation and legal custody instead.

head and then basically left me in the hospital." Jay detailed other inaccuracies in the boy's medical records that he blamed on Alisa's misrepresentations and argued that her misrepresentations led the doctors to diagnose and medicate the boy inappropriately.

Jay also raised concerns based upon medical records he had received relating to their older daughter. The records revealed that the girl had been diagnosed with "Adjustment Disorder with Depressed Mood" in July 2018. Jay believed that the girl must have suffered from an "unknown stressor" in early summer 2018, separate from the stresses caused by moving from Alaska. He argued that during the same period Alisa had staged scripted videos of the children where they were forced to say they were afraid of Jay and suggested that these videos led to the girl's stress and subsequent diagnosis. Jay stated in his affidavit that their daughter was "apprehensive" about visiting New York for the summer and "expressed concern . . . that Alisa would not let them come back." His neighbor's affidavit stated that she had overheard the girl referring to Alisa "using a particular term suggesting she was severely mentally unbalanced" and describing her mother's mental state as "scary." Jay argued that the court should not allow the children to visit Alisa in New York for the summer because it would "risk[] unpredictable outcomes for the children."

Jay also claimed that Alisa was acting in bad faith. He said that in January 2019 Alisa had reported him to New York Child Protective Services (CPS) for not giving their son medication during the boy's visit to Alaska the previous summer, which Jay denied. Jay also claimed that Alisa misrepresented the status of their child custody matter to the New York court in connection with her CPS report.[8] And he argued that Alisa's unwillingness to provide him with their son's medical records was in bad faith,

---

[8] The New York court denied Alisa's motion for a CPS investigation in February 2019.

as was her characterization of a statement by the school principal in Alaska about the boy's suspension.

Finally, based on *Georgette S.B. v. Scott B.*,[9] where we upheld a custody modification based on the mother's interference with therapy, Jay argued that the superior court should award him sole legal custody. Jay contended that Alisa had not "merely sabotaged therapy, [but] . . . weaponized it against both" their son and daughter by "us[ing] therapy and pharmaceuticals as a control mechanism against her children." Jay requested that the court "refer these matters to law enforcement" as child abuse.

Alisa opposed Jay's motion, arguing that his allegations stemmed from medical records predating the court's custody modification and that he was repeating allegations made in his successful motion to modify. She denied staging videos of the children and argued that there was no evidence that their son had been misdiagnosed. In response to Jay's allegations that she interfered with their children's therapy, she argued that Jay had refused to consent to the girl's therapy and attached an email exchange between Jay and Alisa where Jay initially wrote that "a therapist makes sense, once we can figure out how to afford it" and then that "[w]ithout further conversation . . . I can't consent to [therapy]." Alisa claimed that any statements their daughter might have made about Alisa's mental health merely reflected Jay's own conviction that Alisa suffers from mental health issues.

The superior court denied Jay's motion to modify in September, without holding a hearing. Jay moved for clarification and reconsideration, which the court denied. The court explained that it was not required to explain why it denied a motion to modify without a hearing and emphasized that Jay "remains free to file a renewed

---

[9] 433 P.3d 1165, 1171 (Alaska 2018).

motion *based on new evidence* post-dating the court's most recent custody order."
(Emphasis in original.)

Jay appeals the superior court's denial of the motion to modify without a hearing.[10] He argues that information about the children's health, Alisa's interference with the children's therapy, and Alisa's continuing bad-faith behavior and lack of cooperation constitute a significant change in circumstances that required the superior court to hold a hearing on his motion.

## III. STANDARD OF REVIEW

"To determine whether a party is entitled to a hearing on a motion to modify custody, we review the record and arguments de novo to determine whether the party alleged facts which, if true, demonstrate a substantial change in circumstances."[11] We will "take the moving party's allegations as true"[12] and use our "independent judgment to review the denial of a modification motion without a hearing."[13]

We will "affirm the denial if 'the facts alleged, even if proved, cannot warrant modification, or if the allegations are so general or conclusory, and so

---

[10]    Because Jay represents himself in this matter, we accord him lenience that is not granted to attorneys. *See Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987) ("[P]leadings of pro se litigants should be held to less stringent standards than those of lawyers."). He states that he is appealing the denial of his June 2019 motion to modify on September 13, and not his motion for reconsideration, which was filed on September 30 and denied on October 2. He asked leave to file his appeal late and it was granted.

[11]    *Abby D. v. Sue Y.*, 378 P.3d 388, 391 (Alaska 2016) (quoting *Hope P. v. Flynn G.*, 355 P.3d 559, 564 (Alaska 2015)).

[12]    *Id.* (quoting *Collier v. Harris*, 261 P.3d 397, 405 (Alaska 2011)).

[13]    *Id.*

convincingly refuted by competent evidence, as to create no genuine issue of material fact requiring a hearing.' "[14]

## IV.   DISCUSSION

"Modification of a custody determination is a two-step process:  first, 'the parent seeking modification must establish a significant change in circumstances affecting the children's best interests'; only then is a best interests analysis performed."[15] We have held that "[a] motion to modify custody triggers a right to an evidentiary hearing only if the moving party makes a prima facie showing of a substantial change in circumstances affecting the child's welfare"[16] and that "[t]he required change in circumstance must be significant or substantial, and must be demonstrated relative to the facts and circumstances that existed at the time of the prior custody order that the party seeks to modify."[17]  "A change in circumstances is unlikely to be substantial enough to overcome our deep reluctance to shuttle children back and forth unless the change affects the child's welfare and reflects more than mere passage of time."[18]

### A.    The Superior Court Did Not Err By Ruling That Jay Failed To Make A Prima Facie Showing Of Changed Circumstances.

Jay argues that four separate issues each constitute a substantial change in circumstances justifying a modification hearing:  (1) Alisa's interference with the children's therapy; (2) new evidence about Alisa's parenting that was unavailable at the

---

[14]    *Id.* (quoting *Bagby v. Bagby*, 250 P.3d 1127, 1128 (Alaska 2011)).

[15]    *Id.* at 394 (quoting *Hunter v. Conwell*, 276 P.3d 413, 419 (Alaska 2012)).

[16]    *Id.* (quoting *Hope P.*, 355 P.3d at 565).

[17]    *Id.* (quoting *Heather W. v. Rudy R.*, 274 P.3d 478, 481-82 (Alaska 2012)).

[18]    *Id.* (quoting *Hope P.*, 355 P.3d at 565).

time of the modification hearing; (3) Alisa's bad faith behavior; and (4) Alisa's lack of cooperation.

### 1. Interference with therapy

Jay claims that "Alisa interfered with the children's . . . therapy by excluding [him] from the therapeutic process, failing to list [him] on medical releases[,] . . . [and] providing inaccurate information to the children's therapists." But the superior court already addressed Jay and Alisa's dispute about the children's therapy during the previous custody modification hearing, where Alisa testified that Jay refused to consent to their daughter's therapy. And the court already modified custody after finding that Alisa made misrepresentations to medical professionals that could jeopardize the children's health. Because the conduct Jay relies upon occurred before and was addressed at the December 2018 modification hearing, it could not be considered as a change in circumstances for purposes of the June 2019 motion.

### 2. New evidence

Jay argues that before the modification hearing Alisa withheld evidence from him that further demonstrated Alisa's parenting failures.[19] Taken as true,[20] the allegations based on the new evidence do not constitute a change in circumstance.

---

[19] Jay seems to argue that if he had been able to present information from the children's medical records, he would have been entitled to sole legal custody as well as primary physical custody. Even if, out of leniency to a self-represented party, we construe Jay's motion as a Civil Rule 60(b)(2) motion for relief from judgment based on newly discovered evidence, we would find no error. The medical records reveal additional details about previously considered information but do not reveal any new matters. It is therefore cumulative and would not have changed the outcome.

[20] *See Abby D.*, 378 P.3d at 391. ("To determine 'whether a party is entitled to a hearing on a motion to modify custody, we review the record and arguments de novo to determine whether the party alleged facts which, if true, demonstrate a substantial change in circumstances.' ") (quoting *Hope P.*, 355 P.3d at 564)).

### a.     Videos and daughter's diagnosis

Jay first argues that the newly-obtained medical records for the first time reveal that their daughter was diagnosed with an adjustment disorder while she was in Alisa's custody.  The children's medical care while in New York was extensively litigated during the modification hearing and was the basis for the custody modification.  The discovery of a previous diagnosis does not constitute a significant change in circumstance.[21]

Jay also alleges that Alisa coerced their daughter and son to make statements in videos in preparation for the custody modification hearing and that the videos, combined with the girl's diagnosis, constitute a significant change in circumstance.  Jay argues that coercing the girl to describe her fear of him in videos was emotional abuse that led to her diagnosis.  Jay claims that the videos were staged because the children's statements in videos were inconsistent with their behavior during calls he had with them during the same period.  But Jay offered no evidence that Alisa coerced the children into making false statements on video and no evidence that the videos led to their daughter's distress and subsequent diagnosis.  We need not take a moving party's allegations as true "if the allegations are so general or conclusory, and so convincingly refuted by competent evidence, as to create no genuine issue of material fact requiring a hearing."[22]

Even if Jay's allegations about Alisa's coercion were not conclusory, the videos, and any proof that the children were coerced into making them, were available to Jay before the modification hearing.  Jay concedes the videos were made in the

---

[21]     And the girl is currently in Jay's custody and "seeing excellent counselors."

[22]     *Abby D.*, 378 P.3d at 391 (quoting *Bagby v. Bagby*, 250 P.3d 1127, 1128 (Alaska 2011)).

summer of 2018, before the custody modification hearing that granted him primary physical custody. And while he was not aware of the girl's specific diagnosis, he acknowledges that out of concern for the children "neither party . . . wished to bring [the videos] to the Court's full attention" and that they were "provided to the Court . . . [but] not put into evidence." Because Jay could have raised his concerns about the videos' effect upon their daughter's mental health at the earlier hearing, but chose not to, the superior court did not err by determining that they were neither new evidence nor evidence of a change in circumstances for purposes of the June 2019 motion, and not holding a hearing.[23]

### b.    Son's medical records

Jay argues that their son's medical records suggest that he was misdiagnosed and that Alisa fabricated the allegations that led to his hospitalization. Jay argues that the boy's statements in his medical records and to Jay's neighbor, as repeated in her affidavit, prove that Alisa hospitalized the boy unnecessarily.

The boy's hospitalization was at the center of Jay's successful motion to modify custody. Taking Jay's allegations as true, the additional information from the medical records and the neighbor illustrate that Alisa's conduct was worse than Jay alleged at the modification hearing. But Jay argued before the hearing that he believed the boy had been misdiagnosed. And the boy's medical records — which Jay submitted to the court before the hearing — have always shown that he "denied reasons for his hospitalization." The superior court already considered Alisa's "repeated misinformation

---

[23]    *McAlpine v. Pacarro*, 262 P.3d 622, 626 (Alaska 2011) (noting that although "res judicata does not apply to custody modification motions, . . . the principle of finality does — parties should not be allowed to relitigate 'in the hope of gaining a more favorable position' " (quoting *Bunn v. House*, 934 P.2d 753, 758 (Alaska 1997))).

and miscommunications" and their "potential to pose unacceptable risks to" the boy and modified custody based upon that evidence.

The information from the more recently provided medical records was either in existence before the modification hearing or similar to existing evidence. Because the court had considered the risks of Alisa's misleading comments to doctors, the court did not err in finding that Jay's renewed allegations based on medical records did not constitute a significant change in circumstance.

### 3. Bad faith behavior

Jay alleges that Alisa has "falsely represent[ed] statements from school officials, [made] alienating statements to the children, and misrepresent[ed] the Alaska Court process to other Courts" and attached an email chain containing Alisa's false representation as an exhibit to his motion to modify.

But all of his allegations are conclusory. The email was from Alisa to Jay — Jay was the only audience for the misrepresentation. Because it could not affect the children's welfare, it could not amount to a substantial change in circumstance. Jay alleges that Alisa misrepresented their Alaska court proceedings to the New York court in an effort to renew a request for a protective services investigation. But the New York court denied Alisa's motion, creating no change in circumstance that could affect the welfare of the children. And Jay does not explain what "alienating statements" he claims Alisa made. The court is not required to take conclusory allegations as true.[24] The superior court did not err by concluding that Jay's claims that Alisa made alienating statements to the children do not indicate a substantial change in circumstance.

---

[24]     *Abby D.*, 378 P.3d at 391 ("We will affirm the denial [of a motion to modify without a hearing] if . . . 'the allegations are so general or conclusory . . . as to create no genuine issue of material fact requiring a hearing.'" (quoting *Bagby*, 250 P.3d at 1127)).

### 4. Lack of cooperation

Jay argues that Alisa's continued lack of cooperation is a substantial change in circumstance that would be sufficient to modify legal custody. While we have recognized that a " 'continued lack of cooperation' between parents may be a change in circumstances sufficient to justify a modification of custody,"[25] we also recognize that trial courts have broad discretion to fashion child custody orders.[26] "[J]oint legal custody is only appropriate when the parents can cooperate and communicate in the child's best interest."[27] We have affirmed an award of sole legal custody when there is a "complete breakdown in communication"[28] and "the two parents cannot communicate."[29] However, "[o]rdinarily, hostility and dispute between the parents, in and of itself, will not be considered a substantial change of circumstances unless the adverse impact on the child is extreme."[30]

Jay again points to Alisa's "refusal to permit Jay to have access to mental health records and the impact of her inaccurate statement to medical doctors" and argues that her actions make clear that she is not cooperating with him. But in his motion to modify Jay asserted that he was able to obtain the children's medical records once he was

---

[25]     *Riggs v. Coonradt*, 335 P.3d 1103, 1107 (Alaska 2014) (quoting *T.M.C. v. S.A.C.*, 858 P.2d 315, 319 (Alaska 1993)).

[26]     *Ronny M. v. Nanette H.*, 303 P.3d 392, 399 (Alaska 2013) (quoting *Hamilton v. Hamilton*, 42 P.3d 1107, 1111 (Alaska 2002)).

[27]     *Jaymot v. Skillings-Donat*, 216 P.3d 534, 540 (Alaska 2009) (quoting *Farrell v. Farrell*, 819 P.2d 896, 899 (Alaska 1991)).

[28]     *Riggs*, 335 P.3d at 1107.

[29]     *Jaymot*, 216 P.3d at 540.

[30]     *Long v. Long*, 816 P.2d 145, 152 (Alaska 1991).

granted primary physical custody. Alisa's previous refusal to allow Jay access to the children's medical records became inconsequential, and her misrepresentations to medical personnel were already the basis for the court's previous modification. The superior court correctly concluded that there was not a substantial change in circumstance.

## V.    CONCLUSION

"If a number of circumstances are alleged to have changed, the superior court is required to consider them in the aggregate to determine whether they amount to a substantial change."[31]   Each allegation Jay made pertained to information either available or similar to what was available at the time of the custody order or is conclusory.   The allegations, individually or taken together, do not amount to a substantial change in circumstances.   The superior court did not err by denying his motion to modify without a hearing.   We therefore AFFIRM the superior court.

---

[31]    *Collier v. Harris*, 377 P.3d 15, 22 (Alaska 2016).